WARNER, Judge.
Elzie Hawkins appeals a final judgment rendered in favor of defendant/appellees, Joe and Janie Williams, and against appellant based upon a jury verdict finding that Hawkins had not sustained a permanent injury or disfigurement as a result of an automobile/pedestrian accident. He claims that the trial court erred in failing to direct a verdict on the threshold question under section 627.737(2), Florida Statutes (1987) and in failing to grant his motion for judgment notwithstanding the verdict in that the verdict rendered was contrary to the manifest weight of the evidence. We agree and reverse.
Since 1979 Elzie Hawkins had been a paraplegic. As early as 1980 he had developed decubitus ulcers (commonly referred to as bedsores) due to the paraplegia. In 1982 Dr. Brandon treated Hawkins for a fracture to his left tibia. During treatment he developed an infection in his leg. Dr. Brandon testified that Hawkins was more susceptible to infections because of the open decubitus ulcers. While treating the fracture and infection, Dr. Brandon recommended a mid-thigh amputation for Hawkins because of the chances of further fractures and Hawkins susceptibility to infection. However, Hawkins refused, and the infection was managed and stabilized. The fracture healed without further treatment. Dr. Brandon saw Hawkins one more time in the spring of 1985 because of more problems arising from the decubitus ulcer. Between 1982 and 1985 there were no further incidences of infection in the leg.
In June of 1985 Hawkins was struck by appellees’ automobile while he was crossing a street in his .wheelchair. The jury found the appellees to be negligent and ascribed no comparative negligence to Hawkins. As a result of the accident, Hawkins suffered a fracture of the left femur. Dr. Jones, an associate of Dr. Brandon, initially treated Hawkins for the fracture by immobilizing the knee.’
Some three weeks later Hawkins was readmitted to the hospital by Dr. Sandall, also an associate of Jones and Brandon, with a significant flare up of infection in the leg. Dr. Sandall’s discharge summary indicated a diagnosis which included “chronic osteomyelitis of the left femur.” Hawkins continued to lose weight because of the chronic, and now widespread, osteo-myelitis of the left femur. Dr. Sandall testified that the fracture site created a “hot bed” of infection which allowed it to spread up and down Hawkins’ leg. Sandall *620 recommended a hip disarticulation, which involved the removal of the hip joint as well as the leg. He testified this was lifesaving in nature because of the infection.
At trial, Dr. Sandall’s deposition was read to the jury. Dr. Sandall testified that because of the fracture sustained in the automobile accident and the subsequent infection, Hawkins’ leg, of necessity, had to be removed and that the loss of the leg was a severe permanent injury. To counter the testimony, the defense introduced the testimony of Dr. Jones which was somewhat conflicting. Dr. Jones first testified that the hip disarticulation would have come about as a result of the chronic decubitus ulcers whether or not he fractured his leg in the June, 1985 accident, although the fracture may have accelerated the disarti-culation. He then testified that the chronic infection flared up as a result of the 1985 accident but could have been treated by a mid-thigh amputation as Dr. Brandon recommended in 1982 instead of a hip disarti-culation. However, he also testified that the flare up of the infection caused by the fracture ultimately led to the amputation which was a “permanent injury”. There was no testimony presented that there was any other independent cause for a reactivation of the chronic osteomyelitis other than the fractured femur.
Appellees concede that an amputation (or disarticulation) is a significant and permanent disfigurement within the meaning of section 627.737(2)(b), Florida Statutes (1987). See Gillman v. Gillman, 319 So.2d 165 (Fla. 1st DCA 1975). The appellees contend, however, that their negligence was not the “legal proximate cause” of the removal of Hawkins’ leg, citing to Dr. Jones’ testimony that the disarticulation or amputation would have resulted at some point because of the chronic infection, regardless of the fracture of his leg in 1985. Appellant counters that the evidence is un-contradicted that the amputation or disarti-culation was “legally caused” by the negligence of appellees. We agree.
The jury was given the standard instruction on .causation:
Negligence is a legal cause of injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury so that it can reasonably be said that but for the negligence the injury would not have occurred.
Standard Jury Instruction 5.1(a).[1]
The jury was also given the standard jury instruction for aggravation of a preexisting condition.
Any aggravation of an existing disease or physical defect [or action of any such latent condition], resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of (claimant’s) condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make the determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.
There is no question that the fracture of Hawkins’ femur was caused in the accident. The fracture caused an acute flare up of Hawkins’ chronic infection. However, this time, unlike past occasions, the infection spread throughout his system and became life-threatening, necessitating the removal of his leg. That this amputation in 1985 was medically necessary and lifesaving was not contradicted. This distinguishes it from Dr. Brandon’s recommendation of amputation in 1982 which recommendation was given so as to avoid future problems. When fully reviewed and examined, Dr. Jones’ testimony is not contrary to this but merely asserts that the disarti-culation was the result of the aggravation of Hawkins’ preexisting problems.
In C.F. Hamblen, Inc. v. Owens, 127 Fla. 91, 172 So. 694 (1937), decided under analogous facts, the evidence revealed that a fall from a stepladder reactivated osteomyelitis in the plaintiff, necessitating the amputa *621 tion of his leg. The defendant claimed that its negligence (in supplying a defective stepladder) was not the proximate cause of the injury, but the amputation instead was caused by the latent infection. The court stated:
It is settled law that where injuries aggravate an existing ailment or develop a latent one the person whose negligence caused the injury is required to respond in damages for the results of the disease as well as the original injury. In such cases the injury is the prime cause which opens the way to and sets in motion the other cause and the latter cannot be regarded as an independent cause of injury, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. The defendant must respond in damages for such part of the diseased condition as his negligence has caused....
Hamblen, 172 So. at 696. The court then held that under this rule and the facts of the case, the defendant was liable for the plaintiff’s condition.
In the instant case the defendant presented no evidence of any other cause for the flare up of Hawkins’ chronic infection, which even Dr. Jones admits resulted from the fracture sustained in the accident. Therefore, the “legal proximate cause” test was met by uncontradicted evidence, and the jury’s contrary determination is erroneous as a matter of law. Griffis v. Hill, 230 So.2d 143 (Fla.1969).
We therefore reverse and remand for a new trial on damages.
HERSEY, C.J., and LETTS, J., concur.

. Although it was not requested, the jury would ■ have been aided in its endeavor by the concurring cause instruction. Standard Jury Instruction 5.1(b).